## BOARD OF COUNTY COMMISSIONERS OF ST. JOSEPH COUNTY, Defendants-Appellants,

v.

## Brad L. TINKHAM and Shamrock Ford Truck Sales, Inc., Plaintiffs-Appellees.

No. 3–585A130.

Court of Appeals of Indiana, Third District.

April 23, 1986.

Terry A. Crone, Leone, Crone & Rosenfeld, South Bend, and Carl Paul Lamb, Office of Monroe Co. Atty., Bloomington, for defendants-appellants.

Timothy W. Woods, South Bend, for plaintiffs-appellees.

GARRARD, Judge.

In 1984, the St. Joseph County Highway Department decided that it needed four new trucks. Specifications were drawn up and bids received, but all were rejected. Again, specifications were drawn up and bids received and rejected. Finally, a third set of specifications was drawn up and bids received. On this occasion, Shamrock Ford Truck Sales, Inc. (Shamrock) bid $150,616, Michiana Mack Inc. (Mack) bid $150,946, and Western International Trucks, Inc. bid $152,336.

Thirty minutes before the regular meeting of the Board of Commissioners of St. Joseph County (Board), the Board discussed the bids with other county officials. It decided to reject Shamrock's bid and instead buy the trucks from Mack. At its regular meeting, the Board announced its decision.

Shamrock filed suit, asking the trial court to void the contract with Mack, enjoin the Board from violating the Open Door Law[1] and award the contract to it.

After hearing the evidence the trial court entered findings of fact and conclusions of law. It decided that the Board had violated the Open Door Law in three respects since it had not given the public 48 hours notice of the gathering held before its regular meeting, had not prepared and posted an agenda for the gathering, and failed to keep minutes or memoranda concerning it. *See* Finding 31. It ordered the Board to pay Shamrock's attorney's fees and court costs, vacated the award to Mack and enjoined the Board from further violating the Open Door Law. Both sides appeal. The Board contends that the trial court erred in finding a violation of the Open Door Law and in concluding that the violation was knowing and intentional. Shamrock argues that the court should have awarded it the contract.

I.

Was the trial court mistaken when it found a violation of the Open Door Law?

The trial court's order in this case found three violations of the Open Door Law, any one of which would support the injunction and the award of costs. Thus, to be entitled to the reversal it seeks, the Board must show that none of the conduct found by the trial court constituted a violation of the Open Door Law. The Board has done itself a great disservice in this regard by only addressing one ground for the decision in its appellant's brief. Grounds for error can only be framed in the appellant's brief and if addressed for the first time in the reply brief, are waived. *Saloom v. Holder* (1974), 158 Ind.App. 177, 307 N.E.2d 890, 891. Since two of the three bases for the decision in this case were addressed for the first time in the reply brief and thus are waived, and since it was the Board's burden to overcome all of the grounds for the trial court's decision, we

1. IC 5–14–1.5–1 et seq.

are forced to conclude that the Board has failed to establish reversible error.

■ Even had all grounds been preserved, we note that the trial court correctly held that the Open Door Law requires memoranda of meetings to be kept,[2] and that no memoranda concerning the gathering before the regular meeting were prepared. Thus, even on the merits, we would affirm.

Ordinarily, this would end our examination of this aspect of the Board's appeal and we would move to the next alleged error. However, since the Board was enjoined from violating the Open Door Law, a proper interpretation of section 5 of that act may be important.[3] Since the Board properly preserved its argument concerning the alleged violation of that section, we shall, for the benefit of the parties, discuss the trial court's construction of that section.

**2.** IC 5-14-1.5-4(b)

"(b) As the meeting progresses, the following memoranda shall be kept: (i) the date, time and place of the meeting; (ii) the members of the governing body recorded as either present or absent; (iii) the general substance of all matters proposed, discussed or decided; and (iv) a record of all votes taken, by individual members if there is a roll call. The memoranda are to be available within a reasonable period of time after the meeting for the purpose of informing the public of the governing body's proceedings. The minutes, if any, are to be open for public inspection and copying."

We reject the Board's position that permissive language concerning minutes modifies the earlier clause which commands memoranda to be kept.

**3.** IC 5-14-1.5-5

"(a) Public notice of the date, time and place of any meetings, executive sessions, or of any rescheduled or reconvened meeting, shall be given at least forty-eight (48) hours before the meeting; this requirement does not apply to reconvened meetings where announcement of the date, time and place of the reconvened meeting is made at the original meeting and recorded in the memoranda and minutes thereof, and there is no change in the agenda.

(b) Public notice shall be given by the governing body of a public agency by:

(1) posting a copy of the notice at the principal office of the public agency holding the meeting or, if no such office exists, at the building where the meeting is to be held; and

At trial, the Board urged that IC 5-14-1.-5-5(f) exempted them from the 48 hour notice requirement generally imposed by that section. The trial court recognized this, but held:

"That the Board's interpretation of IC 5-14-1.5-5(f) conflicts with the stated purpose and intent of the Indiana Open Door Law and to accept the position of the Board would effectively make the Indiana Open Door Law null and void."

■ We disagree with the trial court's analysis. The General Assembly was free to balance the hardships imposed by open meeting requirements with the benefits derived from them and to decide that in particular cases, the burdens outweighed the benefits. It was within the Legislature's power to carve out exceptions inconsistent with the general policy announced by the Act. This power is recognized by the max-

(2) depositing in the United States mail with postage prepaid or by delivering notice to all news media which file by January 1 an annual written request for such notices with the governing body of the public agency.

(c) Notice of regular meetings need by given only once each year, except that an additional notice shall be given where the date, time or place of a regular meeting or meetings is changed. This subsection does not apply to executive sessions.

(d) If a meeting is called to deal with an emergency involving actual or threatened injury to person or property, or actual or threatened disruption of the governmental activity under the jurisdiction of the public agency by any event, then the time requirements of notice under this section shall not apply, but:

(1) news media which have requested notice of meetings must be given the same notice as is given to the members of the governing body; and

(2) the public must be notified by posting a copy of the notice according to this section.

(e) This section shall not apply where notice by publication is required by statute, ordinance or regulation.

(f) This section shall not apply to the state board of tax commissioners, to boards of county commissioners, town boards, or to any other governing body which meets in continuous session, except that this section shall apply to meetings of these governing bodies which meetings are required by or held pursuant to statute, ordinance or regulation.

(g) This section does not apply to the Indiana general assembly."

im of construction that specific language should control more general statutory language. *Higgins v. Hale* (1985), Ind., 476 N.E.2d 95, 100. Here, the Legislature plainly exempted boards of county commissioners from the rule that 48 hours notice of their meetings be given. The trial court was incorrect in construing the statute so as to delete one of its provisions.

■ Shamrock argues that boards of county commissioners do not meet in continuous session, and thus the exception provided in subsection (f) does not apply to them. Even assuming that the Board's power to call special meetings would not qualify it as meeting in continuous session, we do not agree with Shamrock. We believe that the phrase "which meets in continuous session" modifies only the "other governing bodies" referred to in the same clause. We do not believe that it also modifies the clause which exempts the Board from giving public notice. That interpretation would remove the exception provided by the Legislature, and the courts avoid construing an act so as to nullify any portion of it. *Foremost Life Ins. Co. v. Dept. of Insurance* (1980), 274 Ind. 181, 409 N.E.2d 1092, 1096.

Subsection (f) also provides that otherwise exempt bodies must provide notice of meetings which "are required by or held pursuant to statute, ordinance or regulation." Shamrock contends that the act which organizes boards of commissioners regulates official meetings of county boards and thus all their meetings are governed by statute. *See* IC 36-2-2-6, IC 36-2-2-8.[4] It concludes that the gathering held before the Board's regular meeting was required by or held pursuant to statute.

"Meeting" is a term of art under the Open Door Law. It encompasses any

> ". . . gathering of a majority of the governing body of a public agency for the purpose of taking official action upon public business."

IC 5-14-1.5-2(c). Moreover, "official action" includes receiving information or deliberating on public business. IC 5-14-1.5-2(d).

■ We also recognize those cases holding that a Board can only bind the county by acting in an official meeting. *Jones v. State ex rel. Indiana Livestock Sanitary Board* (1960), 240 Ind. 230, 163 N.E.2d 605. However, these cases do not hold that boards cannot meet unofficially. The Board's gathering before its regular meeting was not a regular meeting. We have not found any other statutory section which required or regulated the premeeting gathering. We conclude that it qualified for the exemption to the 48 hour notice requirement set forth in subsection (f).

## II.

Did the trial court err in deciding that the Board's violation was knowing and intentional?

The Open Door Law provides that a party may recover its attorney's fees and costs if the trial court finds that the government entity's actions were knowing and intentional. IC 5-14-1.5-7(c).

The Board argues that even assuming it was required to give notice of its meetings, it relied on the exemption to the notice requirements apparently provided for it by subsection 5(f). Since it thought it was obeying the law, it concludes that there is no evidence that its "violation" of the law was knowing and intentional.

■ When the law speaks of intent or knowledge it usually means the intent to do the prohibited act, or the knowledge that one is doing so. It does not require knowledge that the act is in violation of the law or the intent to violate a statutory provision. *See, e.g.,* IC 35-41-2-2. Since the Board does not argue that it did not intend the acts it performed, the award of attorney's fees must be affirmed.

4. While IC 36-2-2-8 calls for notice of special meetings, the requirement has been historically interpreted to require only notice to members of the board. *See, e.g., White v. Fleming* (1888), 114 Ind. 560, 16 N.E. 487.

## III.

Did the trial court err by merely voiding the actions taken at the premeeting gathering instead of awarding the contract to Shamrock?

Shamrock contends that the decision to reject its first and third bids were illegal since they were made in violation of the Open Door Law and the competitive bidding statutes. It concludes that the trial court should have ordered the Board to award it the truck contract rather than merely voiding the contract with Mack and remanding the matter to the Board for further action.

■ Assuming that any findings of fact supported its conclusion that rejection of its first bid violated the Open Door Law, we know of no authority, and we refuse to hold, that a county board must award a contract even though no bids have been received which are up to the specifications.

■ As to the third bid, the Open Door Law provides that a court may nullify actions taken in violation of its provisions. IC 5–14–1.5–7(b). It does not give the trial court the authority to usurp the decision-making power of other bodies.

Both the competitive bidding laws and the cases concerning them support this position.

■ The competitive bidding law is intended "to protect the public treasury, and not to benefit a disappointed bidder." *Inman's Inc. v. City of Greenfield* (1980), Ind.App., 412 N.E.2d 126, 128–9. The law itself states "The purchasing agent may reject all bids and ask for new bids." IC 36–1–9–3(h). We fail to find any basis in the law to award the contract to Shamrock.

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

STATON, P.J., concurs in result.

HOFFMAN, J., concurs.